```
1              IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF HAWAII

3

4   UNITED STATES OF AMERICA,       )  CR NO. 22-00106 JAO
                                     )
5                  Plaintiff,        )  Honolulu, Hawaii
                                     )
6         vs.                        )  September 8, 2023
                                     )
7   (01) KELIIKOA KAIMANA FOSTER     )  CHANGE OF PLEA HEARING
    YOUNG aka "KELII,"               )
8                                    )
                   Defendant.        )
9   _____ )

10

11                   TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE JILL A. OTAKE
              UNITED STATES DISTRICT COURT JUDGE
13

14   APPEARANCES:

15   For the Government:        WAYNE A. MYERS, AUSA
                                United States Attorney's Office
16                              District of Hawaii
                                300 Ala Moana Boulevard, Room 6-100
17                              Honolulu, Hawaii 96850

18   For the Defendant (01)     CATHERINE P. GUTIERREZ, ESQ.
     Keliikoa Kaimana           The Law Office of Catherine Gutierrez
19   Foster Young aka           1001 Bishop Street Tower, Suite 710
     Kelii:                     Honolulu, Hawaii 96813
20

21

22   Official Court            ANN B. MATSUMOTO, RPR
     Reporter:                 United States District Court
23                             300 Ala Moana Boulevard, Room C-338
                               Honolulu, Hawaii 96850
24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).
```

```
 1   FRIDAY, SEPTEMBER 8, 2023                    9:38 O'CLOCK A.M.
 2              COURTROOM MANAGER:  Criminal Number 21 (sic), dash,
 3   106 JAO, United States of America versus defendant number (1)
 4   Keliikoa Kaimana Foster Young, also known as Kelii.
 5              This case has been called for a change of plea
 6   hearing.
 7              Counsel, please make your appearances for the record.
 8              MR. MYERS:  Good morning, Your Honor.  Wayne Myers on
 9   behalf of the United States.
10              THE COURT:  Good morning.
11              MS. GUTIERREZ:  Good morning, Your Honor.  Catherine
12   Gutierrez on behalf of Mr. Kelii Foster Young, who's also
13   present.
14              THE COURT:  Good morning.
15              THE DEFENDANT:  Good morning.
16              THE COURT:  You may all be seated.
17              Sir, so just so I know, is your last name Foster
18   Young?
19              THE DEFENDANT:  It's Foster.
20              THE COURT:  It's Foster?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Okay.  So you go by Keliikoa Kaimana
23   Foster?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Okay.  Thank you.
```

1          So Mr. Foster, let me tell you, I am sure that

2   Ms. Gutierrez has done a good job of explaining to you what you

3   can expect today, but let me share a few things with you.

4          The most important thing for me today is to make sure

5   that you understand what's going on, right?

6          THE DEFENDANT:  (Nods.)

7          THE COURT:  That you're entering this plea knowingly,

8   voluntarily, and intelligently.  I have a bunch of questions to

9   ask you.  They're basically from a script.  And some of them

10  may sound pretty formal, but I want you to know that I am

11  listening very carefully; and if at any time you have any

12  questions of me, just interrupt me and it's fine, and you can

13  talk to Ms. Gutierrez.

14         THE DEFENDANT:  Okay.

15         THE COURT:  All right?

16         So with that, I'm going to ask Ms. Mizukami to swear

17  you in.

18         COURTROOM MANAGER:  Mr. Foster, if you could please

19  rise and raise your right hand.

20         KELIIKOA KAIMANA FOSTER YOUNG, SWORN

21         THE DEFENDANT:  Yes.

22         COURTROOM MANAGER:  Thank you.

23         THE COURT:  All right.  Yes, you may be seated.

24         THE DEFENDANT:  (Complies.)

25         THE COURT:  Thank you.

1          So Mr. Foster, you are now under oath, which means

2     that if you say anything that's false, that can be used against

3     you in a future prosecution for perjury or false statement.  Do

4     you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  I need some background information about

7     you to make sure that we have the right person here today and

8     also to make sure that you understand what's happening.

9          So can you tell me your full legal name?

10         THE DEFENDANT:  Keliikoa Kaimana Foster.

11         THE COURT:  And how old are you?

12         THE DEFENDANT:  33.

13         THE COURT:  How far did you go in school?

14         THE DEFENDANT:  Ninth grade.

15         THE COURT:  Okay.  Did you get your GED?

16         THE DEFENDANT:  No.

17         THE COURT:  Okay.  You obviously speak English.  Can

18    you read English?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Is English your native language?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Were you born in the United States?

23         THE DEFENDANT:  Yes.

24         THE COURT:  What is the most recent job you've had?

25         THE DEFENDANT:  I'm a operator at Paradine

1  (verbatim).

2          THE COURT:  What is --

3          THE DEFENDANT:  Construction.

4          THE COURT:  Paradigm?

5          THE DEFENDANT:  Yes.

6          THE COURT:  So what does an operator do?

7          THE DEFENDANT:  I pretty much dig like the sewer,

8  utilities, water, drains.

9          THE COURT:  So for that job I assume you have to read

10  English --

11          THE DEFENDANT:  Yes.

12          THE COURT:  -- and speak English; is that correct?

13          THE DEFENDANT:  Mm-hmm.  Yes.

14          THE COURT:  Okay.  Have you had any illegal drugs or

15  had any alcohol in the last 24 hours?

16          THE DEFENDANT:  No.

17          THE COURT:  Are you taking any non-prescribed drugs

18  that could affect your ability to think clearly?

19          THE DEFENDANT:  No.

20          THE COURT:  Do you feel that you are of a sound mind

21  today and can make good decisions for yourself today?

22          THE DEFENDANT:  (Nods.)

23          THE COURT:  I'm sorry.  So --

24          THE DEFENDANT:  Yes.

25          THE COURT:  -- do you think you're --

1          THE DEFENDANT:  Yes.  Oh, sorry, yes.

2          THE COURT:  Okay.  So let me just make that one clear

3   again for our record.

4          So do you feel that you can think clearly today?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And make good decisions for yourself?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Do you understand that you

9   are here for a hearing regarding your decision to plead guilty

10  in this case?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Have you had enough time to talk with

13  Ms. Gutierrez about this decision?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And are you satisfied with her

16  representation of you?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Other than what is in the plea agreement,

19  has anyone promised you anything in order to get you to plead

20  guilty?

21         MS. GUTIERREZ:  (Confers off the record.)

22         THE DEFENDANT:  No.

23         THE COURT:  Has anyone threatened you, or anyone

24  else, or forced you in any way to plead guilty?

25         THE DEFENDANT:  No.

1          THE COURT:  Are you pleading guilty of your own free

2   will because you are in fact guilty of this crime?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Ms. Gutierrez, do you have any reason to

5   doubt your client's competence to enter a plea today?

6          MS. GUTIERREZ:  No, Your Honor.

7          THE COURT:  Do you believe that this plea is

8   voluntary?

9          MS. GUTIERREZ:  Yes.

10          THE COURT:  All right.  Mr. Foster, I understand that

11   you are pleading guilty today to an indictment.  Have you

12   received a copy of the indictment?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you read the charge -- all of the

15   charges against you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And actually, Mr. Myers, let me ask you,

18   given that Mr. Foster says that his last name is not Foster

19   Young, what do you intend to do about the fact that he's been

20   charged as -- with the last name of Young also?

21          MR. MYERS:  Let me consult with his attorney.  We'll

22   figure out what his precise legal name is.  I think that might

23   be the issue, because our records reflected that his legal name

24   was Foster Young.

25          THE COURT:  Okay.  And then I think if there's an

1   error in that, that can be fixed on the docket.

2            MR. MYERS:  I'll submit something if that's correct,

3   Your Honor.

4            THE COURT:  Great.  Okay.

5            So Mr. Foster, if you have the -- do you have a copy

6   of the plea agreement in front of you?

7            THE DEFENDANT:  Yes.

8            THE COURT:  On occasion I'll be looking at it, and

9   when I do, I'll tell you when I am.  So if you look at page 2

10  of the plea agreement, it outlines the charges against you.

11  And I checked it.  It is correct, based on what's in the

12  indictment.  And so let me go over those with you.

13           You have been charged with conspiracy to distribute

14  and possess with intent to distribute methamphetamine, in

15  violation of 21 U.S.C. sections 846, 841(a)(1), and

16  841(b)(1)(A), in Count 1.

17           In Counts 2 and 4 you have been charged with

18  distribution of methamphetamine, in violation of 21 U.S.C.

19  sections 841(a)(1) and 841(b)(1)(B).

20           In Counts 3, 5, 6 and 7 you have been charged with

21  distribution of methamphetamine, in violation of 21 U.S.C.

22  sections 841(a)(1) and 841(b)(1)(A).  And in Count 8 you have

23  been charged with conspiracy to interfere with commerce by

24  robbery, in violation of 18 U.S.C. section 1951(a).

25           Do you understand that those are the charges against

1   you in the indictment?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And have you received a copy of the

4   indictment and read it?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And am I correct also that you have

7   entered into a plea agreement with the government?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Have you read through the entire

10  agreement or had it read to you?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And have you discussed it with your

13  lawyer?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Did you have enough time to do so?

16           THE DEFENDANT:  Yes.

17           THE COURT:  So I don't have, it looks like, a wet

18  signature copy of the plea agreement, but I do have, it looks

19  like, a copy that was signed by you on February 6 of 2023, with

20  some initials by that.  Are those your initials?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did you initial it today?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And did you originally sign this plea

25  agreement on February 6th --

1          THE DEFENDANT:  Yes.

2          THE COURT:  -- of 2023?  I'm sorry.

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  And am I right then that by

5     initialing it today you are expressing your commitment to

6     follow by the -- everything contained in this plea agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you feel that you understand the terms

9     of --

10         MS. GUTIERREZ:  Judge, I'm sorry.

11         THE COURT:  Yes.

12         MS. GUTIERREZ:  Just to clarify, there were two pages

13    that was missing, and I think that was the intent with the

14    initials, is to include those two pages, which was in the

15    original, but it was not in the copy that was provided to the

16    Court.

17         THE COURT:  All right.  So I think then, so the

18    initials were meant to reflect what?

19         MS. GUTIERREZ:  That what's being submitted today, as

20    I understand, is different from what was emailed to the Court,

21    which was missing two pages, and to initial that what was being

22    provided to the Court now includes those two pages which were

23    in the original signed memorandum.

24         THE COURT:  Okay.  Who has the original?  Does

25    anybody have the original?

1            MR. MYERS:  I think the original's split, Your Honor,

2    between the two parties.  So there was a wet ink version from

3    my office and a wet ink version from the defense.  So --

4            MS. GUTIERREZ:  Okay.

5            THE COURT:  Let me talk to Ms. Mizukami for a moment.

6            (Discussion was held off the record.)

7            THE COURT:  So Mr. Myers, does somebody have a wet

8    ink copy?

9            MR. MYERS:  There is, I believe, in my office, a wet

10   ink copy with my wet ink signature and Mr. Sorenson's, who's

11   the criminal chief's wet signature, and then Ms. Gutierrez has

12   a wet ink copy as well.

13           MS. GUTIERREZ:  Of our --

14           MR. MYERS:  Her signature --

15           MS. GUTIERREZ:  -- signature.

16           THE COURT:  Got it.

17           Why don't we do this, after this hearing, if you

18   could, Ms. Gutierrez, give Mr. Myers your wet ink signature

19   just so somebody has all of it in one place in the event that

20   we need it.

21           I mean, we typically do scan and file these in the

22   record, but in case there's any dispute over that, if we could

23   just house those all in one place, I think that would be

24   helpful.

25           MR. MYERS:  Will do, Your Honor.

1          THE COURT:  All right.  Thank you.

2          Turning back to the terms of the plea agreement, let

3     me ask you to confirm again, Mr. Foster, that this is the

4     entire agreement between you and the government.

5          THE DEFENDANT:  Oh, yeah.

6          THE COURT:  I'm sorry?

7          MS. GUTIERREZ:  This is --

8          THE DEFENDANT:  Okay.  Oh, yeah.

9          THE COURT:  Do you understand that I am not required

10    to accept the plea agreement and I may reject it?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that the stipulations

13    in the plea agreement are between you and the government only

14    and that I am not required to follow them?

15         THE DEFENDANT:  Yes.

16         THE COURT:  I will ask Mr. Myers then to tell us

17    generally, please, what the terms are of this plea agreement.

18         MR. MYERS:  Yes, Your Honor.  The essential terms of

19    the plea agreement, I'll start with paragraph 4, which is the

20    agreement.  The defendant agrees to plead guilty to Count 1 of

21    the information -- that's of the indictment, rather -- which is

22    the conspiracy to distribute and possess with intent to

23    distribute, in violation of 21 U.S.C. sections 846, 841(a)(1),

24    and (b)(1)(A).

25         In return, the government agrees to dismiss after

1    sentencing the charges against the defendant in Counts 2

2    through 7, which charge him with distribution of

3    methamphetamine substantively, as well as Count 8, which

4    charges him with conspiracy to interfere with commerce by

5    robbery.

6            Paragraph 7 of the plea agreement, the defendant

7    acknowledges he understands the penalties to the crime for

8    which he is pleading guilty.

9            In paragraph 8, the defendant admits to certain facts

10   that relate to the count to which he's pleading guilty.

11           In paragraph 10, the parties stipulate that the

12   defendant is responsible for approximately 1,847 grams of

13   methamphetamine, actual, which results in a base offense level

14   of 36 under the sentencing guidelines.

15           The government agrees that the defendant should

16   receive a two-level downward -- downward adjustment for

17   acceptance of responsibility and a third for timely acceptance.

18           In paragraph 11, the parties acknowledged that the

19   stipulations are not binding on the Court.

20           In paragraph 12, the defendant acknowledges he is

21   aware that he has the right to appeal his conviction and the

22   sentence imposed.

23           THE COURT:  Paragraph 13.

24           MR. MYERS:  My apologies.  Yes, correct.

25           And so he in that paragraph agrees to knowingly and

1    voluntarily waive his right to appeal his conviction and any

2    sentence within the guideline range as determined by the Court

3    at the time of sentencing.  The defendant also waives his right

4    to challenge his conviction or sentence in any collateral

5    attack, including but not limited to a habeas section 2255

6    motion, but retains the ability to collaterally attack a

7    sentence that is greater than the specified guideline range,

8    and he retains the right to make a claim of ineffective

9    assistance of counsel in a collateral attack.

10            In paragraph 15, the defendant agrees to forfeit

11   property identified in paragraph 3 of the forfeiture notice in

12   the indictment.

13            In paragraph 18, the defendant acknowledges he is

14   aware of and is waiving all of his trial rights.

15            In paragraph 22, the defendant agrees to cooperate

16   fully with the United States.  Those are the essential terms of

17   the agreement, Your Honor.

18            THE COURT:  All right.  Thank you.

19            Ms. Gutierrez, would you agree that those are the

20   essential terms of this plea agreement?

21            MS. GUTIERREZ:  Yes.

22            THE COURT:  Mr. Foster, do you understand that those

23   are the terms, generally speaking, of this plea agreement?

24            THE DEFENDANT:  Yes.

25            THE COURT:  I'm now going to ask Mr. Myers to tell us

1  what the penalties are for Count 1 that you're pleading guilty

2  to today.

3          MR. MYERS:  Your Honor, the defendant faces a term of

4  imprisonment of not less than ten years and not more than life,

5  a fine of up to ten million dollars, and a term of supervised

6  release of not less than five years and up to life.

7          In addition, the Court must impose a one hundred

8  dollar special assessment for each count.  So in this case that

9  will be a one hundred dollar special assessment.

10          The defendant acknowledges that -- and the defendant

11  has forfeiture obligations as well, pursuant to Title 21 as set

12  forth in the indictment.

13          Defendant also faces loss of federal benefits as set

14  forth in page 4 of the plea agreement.  Those are the

15  penalties, Your Honor.

16          THE COURT:  Thank you.

17          Ms. Gutierrez, do you agree that those are the

18  penalties?

19          MS. GUTIERREZ:  Yes.

20          THE COURT:  Mr. Foster, do you understand that by

21  pleading guilty today those are the penalties that you face?

22          THE DEFENDANT:  Yes.

23          THE COURT:  I will now talk to you about the loss of

24  federal benefits that Mr. Myers just mentioned.

25          Do you understand that by pleading guilty today you

1  will be considered to have been adjudged guilty of a felony

2  offense?

3             THE DEFENDANT:  Yes.

4             THE COURT:  If I accept your plea, that can impact

5  some important civil rights, such as the right to vote, the

6  right to hold public office, the right to serve on a jury, and

7  the right to possess any kind of firearm or ammunition.  Do you

8  understand that?

9             THE DEFENDANT:  Yes.

10            THE COURT:  And do you understand that by giving

11 up -- that you may potentially be giving up these valuable

12 civil rights by entering this plea today?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Thank you.

15            I will now ask Mr. Myers to tell us what the elements

16 are of this crime, because I need to make sure that you are in

17 fact guilty of it.

18            MR. MYERS:  Your Honor, there are three elements.

19            First, that there was an agreement between two or

20 more persons to distribute methamphetamine and possess

21 methamphetamine with the intent to distribute it.

22            Second, that the defendant joined in that agreement

23 knowing of its purpose and intended to help accomplish that

24 purpose.

25            And third, that the conspiracy involved the

1   distribution of 50 grams or more of actual methamphetamine.

2           THE COURT:  Ms. Gutierrez, do you agree that those

3   are the elements?

4           MS. GUTIERREZ:  Yes.

5           THE COURT:  So Mr. Foster, what this means is that

6   those are the elements the government would need to prove

7   beyond a reasonable doubt to a unanimous jury in order for you

8   to be convicted of this crime.  And by giving up your right to

9   jury trial today and pleading guilty, you're not going to hold

10  the government to its burden of proof.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  I will now ask Mr. Myers to tell us what

13  the evidence is that the government would be prepared to offer

14  at trial.  And if you are going to read from paragraph 8, if

15  you could just let us know.

16          MR. MYERS:  That was my intention, Your Honor, if

17  that's acceptable to the Court.

18          THE COURT:  That's fine.  Thank you.

19          MR. MYERS:  At trial, Your Honor, the government

20  would prove each of the following facts beyond a reasonable

21  doubt.  I'm beginning at paragraph 8a on page 5 of the

22  memorandum.

23          Between at least September 2020 and continuing

24  through at least July 2021, the defendant had a criminal

25  agreement with his coconspirators, Austin Waiwaiole, Rocky

1  Duque, Travis Dias, and Kaniela Perez, and others, to

2  distribute and possess with the intent to distribute what the

3  defendant knew was methamphetamine, actual, a Schedule II

4  controlled substance, on Oahu, in the District of Hawaii.

5          On or about November 10th, 2020, the defendant agreed

6  with his coconspirator Austin Waiwaiole to distribute

7  approximately 28 grams, actual, of methamphetamine to a drug

8  customer on Oahu.

9          After telling Waiwaiole about the nature of the

10  meeting, i.e., that he was about to meet a drug customer to

11  conduct an illegal drug transaction, Waiwaiole agreed to drive

12  the defendant to meet with the drug customer, and then watched

13  as the defendant conducted the transaction, and returned to

14  Waiwaiole's vehicle with $650 in illegal proceeds.

15          On or about March 15th, 2021, the defendant agreed

16  with his coconspirators Rocky Duque and Travis Dias to

17  distribute approximately 442 grams of methamphetamine, actual,

18  to a drug customer on Oahu.

19          Dias and the defendant agreed that Dias would bring

20  the methamphetamine to a meeting location and deliver it to a

21  defendant who, in turn, would distribute it to the drug

22  customer.  After telling Duque that he needed a ride to conduct

23  an illegal methamphetamine transaction, Duque agreed to and did

24  use his vehicle to drive the defendant to the meeting location.

25          At the meeting location, the defendant, Duque and the

1 drug customer waited in Duque's vehicle for Dias to arrive with

2 the methamphetamine.  While waiting in Duque's vehicle, all

3 three men discussed the purpose of the meeting, including how

4 to assess the quality of methamphetamine and the profit one can

5 make by trafficking methamphetamine.

6        After Dias arrived at the meeting location in his

7 vehicle, the defendant exited Duque's vehicle, entered Dias's

8 vehicle, obtained the methamphetamine from Dias, and then

9 returned to Duque's vehicle, where he then handed the

10 methamphetamine to the drug customer, in Duque's presence,

11 inside Duque's vehicle.

12        The drug customer provided the defendant with $6,500

13 for the methamphetamine in Duque's presence.

14        On or about June 15th, 2021, the defendant agreed

15 with his coconspirator Kaniela Perez to distribute

16 approximately 866 grams, actual, of methamphetamine to a drug

17 customer on Oahu.  Perez and the defendant agreed that Perez

18 would supply the methamphetamine for the transaction.  Pursuant

19 to that agreement, the defendant drove his vehicle to pick up

20 Perez in a parking lot.  Perez and the defendant then drove

21 together in the defendant's vehicle to a meeting location.

22 There, the defendant met the drug customer, who fronted $15,000

23 to the defendant.  The defendant then returned to his vehicle

24 and provided the $15,000 to Perez.

25        Shortly thereafter, at a nearby location, Perez

1  exited the defendant's vehicle and entered a vehicle driven by

2  Perez's methamphetamine supplier and obtained from that

3  supplier the methamphetamine for the defendant's drug customer.

4  The defendant and Perez, who was then carrying approximately

5  three pounds of methamphetamine, entered the drug customer's

6  vehicle and provided approximately two pounds, i.e.,

7  approximately 866 grams, actual, of methamphetamine to the drug

8  customer.

9          Those are the facts the government would prove beyond

10  a reasonable doubt at trial, Your Honor.

11          THE COURT:  Thank you.

12          Mr. Young, were you reading along and listening to

13  Mr. Myers?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Is everything that he said true?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Is anything incorrect or untrue?

18          THE DEFENDANT:  No.

19          THE COURT:  Can you tell me in your own words what

20  makes you guilty of this crime?

21          THE DEFENDANT:  I know I sold the metham -- I mean, I

22  got the methamphetamine from somebody and sold it to the

23  customer.

24          THE COURT:  And did you have an agreement with

25  others, your coconspirators named in the indictment, to do

1   this?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And was this a conspiracy that lasted

4   from at least September 2020 through at least July 2021?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And at all times did you know that what

7   you were distributing and agreeing to distribute was

8   methamphetamine?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Thank you.

11             Mr. Myers, any other questions you'd like me to ask?

12             MR. MYERS:  No, Your Honor.  Thank you.

13             THE COURT:  So next, Mr. Foster, I'm going to talk to

14   you a little bit about sentencing.  United States law

15   establishes detailed sentencing guidelines which specify ranges

16   of sentence for people convicted of federal crimes.  Now, these

17   ranges are advisory only, so I'm not required to follow them,

18   but I am required to consider them at the time of sentencing.

19             I'm also required to consider factors in a law known

20   as 18 United States Code section 3553.  Some of those factors

21   include things like the nature and circumstances of this

22   offense, your history and characteristics, the need for just

23   punishment, and other things.

24             Have you and Ms. Gutierrez talked about how the

25   guidelines might apply in your case?

1      THE DEFENDANT:  Yes.

2      THE COURT:  Do you understand that I will not be able

3  to determine the guidelines for your case until after a

4  presentence report has been completed and you and your lawyer

5  have had an opportunity to object to it?

6      THE DEFENDANT:  Yes.

7      THE COURT:  The plea agreement contains certain

8  stipulations regarding sentencing.  Do you understand those

9  stipulations?

10     THE DEFENDANT:  Yes.

11     THE COURT:  Do you understand that I can reject those

12  stipulations?

13     THE DEFENDANT:  Yes.

14     THE COURT:  After I have determined what the

15  guidelines is and after I consider all of the factors in that

16  statute or that law I mentioned a moment ago, do you understand

17  that I can impose a sentence that is more severe or less severe

18  than the guideline range?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Do you understand that if the sentence is

21  more severe than expected, you will not be allowed to withdraw

22  your guilty plea?

23     THE DEFENDANT:  Yes.

24     THE COURT:  Do you understand that any discussions

25  you've had with Ms. Gutierrez regarding the type of sentence

1  you may receive and any recommendation you or she or Mr. Myers

2  makes at sentencing are not binding on me?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand --

5            THE DEFENDANT:  Yes.  Yes.

6            THE COURT:  Do you understand that at sentencing I

7  could in fact sentence you to the maximum allowed by law?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Has anyone promised you what your

10  sentence will be?

11            THE DEFENDANT:  No.

12            THE COURT:  There's no limitation on the information

13  that I can consider at the time of sentencing concerning your

14  background, character, and conduct, as long as the information

15  provided to me is sufficiently reliable.  Do you understand

16  that?

17            THE DEFENDANT:  Yes.

18            THE COURT:  If you are sentenced to prison, a term of

19  supervised release may follow, and you could be given

20  additional time in prison if you violate the terms of

21  supervised release.  Do you understand that?

22            THE DEFENDANT:  Yes.

23            THE COURT:  There is no such thing as parole in the

24  federal system; and if you are sentenced to prison, you will

25  not be released on early parole.  Do you understand that?

1      THE DEFENDANT:  Yes.

2      THE COURT:  The plea agreement contains an appeal

3  waiver outlining your appeal rights that you're giving up, at

4  paragraph 13.  Have you had an opportunity to read that waiver

5  with your lawyer?

6      THE DEFENDANT:  Yes.

7      THE COURT:  Do you understand that you're knowingly

8  waiving your right to appeal or challenge your conviction and

9  sentencing except as indicated in the language of that waiver?

10      THE DEFENDANT:  Yes.

11      THE COURT:  That waiver states that you may appeal

12  any sentence greater than the guideline range that I determine

13  at the time of sentencing, but only that portion that is

14  greater than the guideline range.  In other words, if I

15  sentence you to two months greater than the guidelines range,

16  you can only appeal up -- that two-month additional sentence.

17  Do you understand that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Do you understand that the government is

20  not forfeiting its right to appeal the sentence in this case?

21      THE DEFENDANT:  Yes.

22      THE COURT:  Have you read and adopted the financial

23  disclosure requirements at paragraph 14?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Okay.  Paragraph 15 contains a forfeiture

1   paragraph -- language, which says that you are giving up all of

2   your right, title, and interest to the following property:  A

3   silver Ford F-250 bearing Hawaii registration RGN351 and a 2016

4   white Mercedes-Benz sedan bearing Hawaii registration SFS888.

5   Are you agreeing to forfeit your rights to both?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you also understand that you're

8   consenting to the entry of a money judgment in the amount of

9   $24,000 -- $24,100?

10              THE DEFENDANT:  Yes.

11              THE COURT:  And by agreeing to all of this, you're

12   giving up your right to challenge any of these forfeitures on

13   constitutional grounds, including that it might constitute

14   excessive fine or punishment under the Eighth Amendment; do you

15   understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  I'm now going to talk to you about the

18   rights that you're giving up, the trial rights that you're

19   giving up by pleading guilty today.

20              Under the Constitution and laws of the United States,

21   you have a right to persist in your plea of not guilty and are

22   entitled to a trial by jury on the charges against you.  Do you

23   understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  At trial you would be presumed to be

1   innocent, and the government would have the burden of

2   presenting evidence to prove your guilt beyond a reasonable

3   doubt, and at no time would you have to prove that you are not

4   guilty.  Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  To be found guilty at a trial, a jury of

7   12 people would have to all agree that you are guilty beyond a

8   reasonable doubt.  Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  At all stages of the prosecution,

11   including trial, you would have the right to assistance of

12   counsel in your defense; and if you couldn't afford a lawyer,

13   one would be appointed for you.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  At trial you would have the right to see

16   and hear all the government witnesses and have them questioned

17   by your lawyer.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  You could object to evidence offered by

20   the government and offer evidence on your own behalf, and you

21   could compel witnesses to testify.  Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  You would have the right to testify if

24   you chose to do so, but you'd also have the right to remain

25   silent, and the jurors could not draw any conclusions that you

1   are guilty because you remained silent.  Do you understand

2   that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  By entering a plea of guilty, and if I

5   accept your plea, there will be no trial and you will have

6   waived or given up your right to trial, as all of the other

7   rights we've already gone over.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you plead guilty, you will also give

10  up your right not to incriminate yourself because at sentencing

11  I may in fact ask you some questions about why you committed

12  this crime.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you have any questions about any of

15  these rights?

16         THE DEFENDANT:  No.

17         THE COURT:  Knowing these rights, do you still wish

18  to plead guilty today?

19         THE DEFENDANT:  Yes.

20         THE COURT:  The plea agreement also contains, at

21  paragraph 20, what happens if at the end of this hearing you

22  choose to plead not guilty and/or if after this hearing is over

23  you attempt to withdraw this guilty plea.

24         Have you read that paragraph and understand what it

25  means?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  I'm going to now talk about the

3   paragraph beginning at page 22.  I'm not going to read that to

4   you, but I have some questions about your cooperation with the

5   government.

6               Are you agreeing to fully cooperate with the United

7   States?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that you are agreeing

10   to testify truthfully at any trials or hearings at which the

11   prosecution asks you to testify?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you agree to make yourself available

14   to speak to law enforcement and members of the U.S. Attorney's

15   office at any time and to give truthful answers to their

16   questions?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you agree that you will not invoke the

19   right to not testify at any hearing related to the crimes

20   charged in this indictment or any related investigation?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you agree that your sentencing date

23   may be delayed based on the government's need for your

24   continued cooperation?

25          THE DEFENDANT:  Yes.

1                  THE COURT:  Do you understand that the prosecution

2    may, but is not required to, ask the Court to sentence you to a

3    term below your guidelines range in exchange for your

4    cooperation?

5                  THE DEFENDANT:  Yes.

6                  THE COURT:  Do you also understand that it is

7    entirely up to the prosecution whether or not to make that

8    motion, and they're not stating in this agreement that they

9    promise to do so?

10                 THE DEFENDANT:  Yes.

11                 THE COURT:  Do you also understand that even if the

12   prosecution makes that motion and asks me to sentence you to a

13   term below your guidelines range, I could reject that request?

14   Do you understand that?

15                 THE DEFENDANT:  Yes.

16                 THE COURT:  I could also choose not to give you as

17   much of a break as they are asking me to do.  Do you understand

18   that?

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  All right, then.  I -- now is the time

21   officially, Mr. Foster, for me to ask you:  As to the

22   indictment's charge of Count 1, conspiracy to distribute and

23   possess with intent to distribute methamphetamine, in violation

24   of 21 U.S.C. section 846, how do you plead, guilty or not

25   guilty?

1              THE DEFENDANT:  Guilty.

2              THE COURT:  I find, Mr. Foster, that you are

3    competent to understand the proceedings and to enter a knowing

4    and informed plea, that you understand the charge to which you

5    are pleading guilty, that you are entering a knowing and

6    voluntary plea and not entering the plea because of any force

7    or threat, and you are not entering the plea because of any

8    promise other than what is in the plea agreement.

9              The plea of guilty is supported by an independent

10   basis in fact containing each of the essential elements of the

11   offense.  I find that you know all of your rights associated

12   with trial and that you understand the guidelines and the other

13   factors that I must consider when imposing punishment.

14             And as you have acknowledged you are in fact guilty,

15   I accept your guilty plea and you're now adjudged guilty of the

16   offense.

17             I have filed this plea agreement, but I reserve

18   determination of whether or not to accept the plea agreement

19   until after a presentence report has been prepared.

20             Let me ask for a sentencing date.

21             COURTROOM MANAGER:  Yes, Your Honor.  January 17th,

22   2024, at 9:00 O'clock a.m.

23             THE COURT:  All right.  Does that work for everyone?

24             MR. MYERS:  It does, Your Honor.

25             MS. GUTIERREZ:  Yes.  Thank you.

1           THE COURT:   Okay.  So Mr. Foster, I apologize if I

2     might have called you Mr. Young a moment ago.  But let me talk

3     to you a little bit about what happens next.

4           I assume, Mr. Myers, you are not asking that he be

5     remanded?

6           MR. MYERS:   We are not.

7           THE COURT:   Okay.  So I find by clear and convincing

8     evidence that you are not a current threat to the public safety

9     or a risk of flight.

10          I looked through what Pretrial Services is doing for

11    you.  I see that you are taking drug tests and that you are

12    testing negative.  Continue with the good work there.

13          If you fail to show up for sentencing, that's a huge

14    problem, right?  That's something I will count against you at

15    your eventual sentencing, and you could potentially also risk a

16    new charge.

17          In the meantime, you should have or will have shortly

18    some pamphlets from U.S. Probation to explain to you what you

19    can expect next.

20          I am requiring you to meet with the U.S. Probation

21    office for an interview for the presentence report.

22    Ms. Gutierrez can attend that meeting.

23          The other thing that I tell all defendants is that at

24    the time of sentencing the only thing I know about you is

25    what's been given to me in the presentence report, what the

1    government submits, and what your lawyer submits.

2            So if you want to write a letter to me ahead of time

3    to include in your sentencing materials, or have other people

4    write letters, or if you want to say something at sentencing so

5    that I have a better understanding of who you are, I invite you

6    to do that.

7            I warn you that there are occasions where some

8    defendants hurt themselves by what they say, either in their

9    letter or in court.  So work with Ms. Gutierrez on what it is

10   you want to say, if anything.  And I won't hold it against you

11   either if there's nothing that you wish to say.

12           All right.  Mr. Myers, did I miss anything?

13           MR. MYERS:  You did not, Your Honor.

14           THE COURT:  Okay, thank you.

15           Ms. Gutierrez, anything that I missed?

16           MS. GUTIERREZ:  No, Your Honor.  Thank you.

17           THE COURT:  All right.

18           Okay.  So Mr. Foster, continue, like I said, to test

19   negative.  Continue to do what you're doing with Pretrial.

20   Even though I know their supervision of you isn't very robust,

21   I will make note of whether or not you are complying with all

22   conditions at the time of sentencing.  And we'll see you in

23   January.

24           THE DEFENDANT:  All right.  Thank you.

25           THE COURT:  Thank you.  We are adjourned.

1                    COURTROOM MANAGER:  All rise.

2                    Court is now adjourned.

3                    (The proceedings concluded at 10:09 a.m.,

4       September 8, 2023.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2            I, Ann B. Matsumoto, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. Sec. 753 the foregoing is a

5    complete, true, and correct transcript of the stenographically

6    recorded proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9            DATED at Honolulu, Hawaii, September 20, 2023.

10

11

12
                        _/s/ Ann B. Matsumoto_____
13                      ANN B. MATSUMOTO, RPR

14

15

16

17

18

19

20

21

22

23

24

25